## Beam, Appellant, *v.* Ephrata Borough.

Argued October 1, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*B. M. Zimmerman,* with him *Brown & Zimmerman,* for appellants.

*George F. Baer Appel,* with him *F. Lyman Windolph* and *Townsend, Elliott & Munson,* for appellees.

OPINION BY MR. JUSTICE COHEN, March 24, 1959:

This taxpayers' suit was brought to restrain the Borough of Ephrata and the individual members of the borough council from issuing $350,000 of non-debt revenue bonds, complaining if the bonds were issued a debt would be created in violation of the debt limitation

350

provision of the Pennsylvania Constitution.[1] The lower court sustained preliminary objections to the complaint in equity from which decree this appeal was taken.

It was stipulated that the gross revenues from the electric system, which was to be improved with the proceeds of the bond issue were sufficient to pay the operating expenses, principal and interest required by the proposed bonds, thereby providing a complete self-sustaining bond issue. It was further stipulated that the borough does not have sufficient councilmanic and electorial borrowing capacity under the constitutional provision to borrow the money necessary to pay for the proposed improvements.[2]

The Borough of Ephrata passed Ordinance No. 725 which authorized the issuance of bonds pursuant to the borough code permitting non-debt revenue bonds to be issued for capital improvements to certain public service facilities.[3] The Municipal Borrowing Act pro-

---

[1] The Pennsylvania Constitution, Art. IX, §8, provides that: "The debt of any county, city, borough, township, school district or other municipality or incorporated district, except as provided herein, and in section fifteen of this article, shall never exceed seven (7) per centum upon the assessed value of the taxable property therein, nor shall any such county, municipality or district incur any debt, or increase its indebtedness to an amount exceeding two (2) per centum upon such assessed valuation of property, without the consent of the electors thereof at a public election in such manner as shall be provided by law."

[2] If the Borough of Ephrata's bond issue is within the debt limitation provision, then the councilmanic borrowing capacity will be exceeded by $338,924 and the total electoral borrowing capacity by $191,734.

[3] Act of April 3, 1956, P. L. 1373, 53 P.S. §47495, which provides: "(a) For the purpose of financing the cost and expense or its share of the cost and expense of capital improvements by altering, improving or enlarging . . . (iii) its electric light or power plant or distribution system, . . . any borough owning any such plant or facility may issue non-debt revenue bonds secured solely

vides the method by which these revenue bonds may be issued.[4]

The ordinance and the bonds proposed to be issued, among other things, provided that the bonds were payable solely out of electric revenues and that no taxes will be levied for the payment of the bonds or the interest that might accrue, and that no property of the borough may be taken to satisfy either the principal or interest requirements. We must decide whether the issuance of these bonds, which are issued to provide funds for improvements to an existing electric system and which are payable both as to interest and principal solely out of electric revenues and for which payment no taxes will be levied or borough property taken, create a debt within the meaning of Article IX, §8 of the Constitution of Pennsylvania.

While it is true that in *Lesser v. Warren Borough,* 237 Pa. 501, 85 Atl. 839 (1912) we held that revenue bonds issued by the borough for the acquisition of a water company created a debt in violation of Article IX, §8 of the Constitution, nevertheless, there the borough bonds were secured not only by the water works' revenue and income, but also by a mortgage liened against the physical property of the water works itself. Even though there was no "other liability whatsoever" on the part of the borough we held that a debt was created because, on default in the payment of the bonds

by a pledge, in whole or in part, of the annual rentals or charges for the use of the product or service manufactured or furnished by the entire plant system or facility on or for which the capital improvements were made. The bonds shall be issued and sold in the manner provided by the Municipal Borrowing Law, and shall not pledge the credit nor create any debt nor be a charge against the general revenues nor be a lien against any property of the borough."

[4] Act of June 25, 1941, P. L. 159, art. VI, §§620-633, 53 P.S. §§6620-6633.

or their interest, borough property would be subject to foreclosure proceedings and the borough would lose both the property and the improvements. Here, the Ephrata Borough Council having the benefit of our decisions in *Lesser v. Warren Borough,* supra, as well as *Tranter v. Allegheny County Authority,* 316 Pa. 65, 173 Atl. 289 (1934); *Kelley v. Earle,* 325 Pa. 337, 190 Atl. 140 (1937); and *Graham v. Philadelphia,* 334 Pa. 513, 6 A. 2d 78 (1939), provided for the issuance of a bond not secured by a mortgage or a lien on the physical property of the borough. Now in the event of default the borough would not lose the asset securing the mortgage. Thus, it is seen that the *Lesser* case has no application whatsoever to the instant plan of finance.

For the past twenty-five years we have observed all types of municipalities finance innumerable public improvements through the facility of the "Authority." These self-liquidating projects were developed outside of the framework of Article IX, §8 of the Constitution and imposed no obligation or debt upon the municipality. Surely a municipality may do directly what it has done indirectly through the facility of an "Authority" without doing violence to Article IX, §8.

A substantial number of our sister jurisdictions having provisions similar to Article IX, §8 of our own Constitution have come to the conclusion which we now adopt,[5] namely—that revenue bonds issued to provide funds for improvements to a borough electric system and which bonds are repaid solely out of the electric revenues and, for the repayment of which, no taxes have been or are to be levied or borough property taken,

---

[5] The various cases have been collected and annotated in 72 A.L.R. 688 (1931), 96 A.L.R. 1385 (1935), and 146 A.L.R. 328 (1943). See also McQuillin, Municipal Corporations, §43.34 (3d ed. 1950).

are not a debt within the meaning of Article IX, §8 of the Constitution of Pennsylvania.[6]

Appellants next attack the escrow agreement as an unlawful delegation of authority in violation of Article III, §20 of our Constitution. The escrow agent, The Farner's National Bank of Ephrata, a private corporation, is vested, under the agreement, with authority to collect all the revenues of the electric system and act as a paying agent under predetermined arrangements specifically detailed therein.

Article III, §20 prohibits delegation to any private corporation of "any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." This provision has been discussed in a number of cases but *Lighton v. Abington Township,* 336 Pa. 345, 9 A. 2d 609 (1939) closely resembles the problem in the instant case. There, a taxpayers' suit was successfully instituted to enjoin the township from proceeding to float a bond issue which contained a trust indenture wherein the trustee, a private corporation, was appointed in the general role of paying agent with power to operate the municipal improvement in event of default. This Court held that the plain language of the Constitution prohibited the township from delegating any authority to the private trustee whether the municipal property was used in a governmental or proprietary capacity.

The escrow agreement here, while not containing the extensive grant of power found in the *Lighton* case, nevertheless is contrary to the plain language of the Constitution. It can scarcely be maintained that the agreement here did not delegate to the private corpora-

---

[6] Not being a debt, Art. 9, §10 of the Constitution of Pennsylvania does not apply.

tion the municipal functions sought to be protected by the Constitution. Our plain duty, in that event, is to strike down this agreement as violative of Article III, §20. Since appellees concede that the agreement is not regarded as a vital part of their proposed revenue bond financing plan, the Borough of Ephrata can provide adequate arrangements that do not contravene Article III, §20.

Finally, appellants dispute the provision in Ordinance No. 725 providing for a private sale of the non-debt revenue bonds at the option of borough council. They maintain that the non-debt revenue bonds should be first offered at public sale (before a private sale is authorized) in the same manner provided for general obligation bonds in the Act of June 25, 1941, P.L. 159, 53 P.S. §6212. The act relating to the issuance and sale of non-debt revenue bonds[7] provides that they shall be serial bonds as provided in the act for general obligation bonds;[8] however, there is no mention of the type of sale contemplated. In view of the absence of any legislative expression as to the manner of sale for these non-debt revenue bonds borough council may adopt its own desired procedure. It would seem to us to be the better practice to offer these public improvement bonds for public sale, with the proviso however, that in the event the public sale does not prove successful, then the borough can proceed to sell the bonds through private arrangements. We would venture that this procedure would overcome any objections voiced by the taxpayers here and, at the same time, provide for public competition in this needed municipal improvement.

Order modified and affirmed.

---

[7] Act of June 25, 1941, P. L. 159, 53 P.S. §§6620-23.
[8] Act of June 25, 1941, P. L. 159, 53 P.S. §6210.

CONCURRING OPINION BY MR. JUSTICE BELL:

In my judgment it was not only wise but necessary for the Borough of Ephrata to make a public offering of these bonds.

With this exception I agree with the able opinion of Justice COHEN.

Mr. Justice BENJAMIN R. JONES joins in this concurring opinion.